UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDREW EVERS,<br><br>   Plaintiff,<br><br> v.<br><br>CAMPAIGNSIDEKICK, LLC,<br><br>   Defendant. | No. 24 CV 11067<br><br>Judge Georgia N. Alexakis |

**MEMORANDUM OPINION AND ORDER**

  Plaintiff Andrew Evers, who is proceeding *pro se*, received numerous unwanted text messages and phone calls between May and October 2024. In his amended complaint, Evers alleges that defendant CampaignSidekick, LLC violated the Telephone Consumer Protection Act ("the Act"), *see* 47 U.S.C. § 227(b)(1)(B) and (c)(5), by sending these communications to him without prior approval. CampaignSidekick now moves to dismiss. [24]. For the following reasons, that motion is denied in part and granted in part.

**I. Legal Standards**

  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court must accept the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but a court need not accept legal conclusions or "threadbare recitals" supported by "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. Background

Evers received "numerous unsolicited text messages and phone calls with political content" starting in May 2024. [10] ¶ 10; [10-1]. Evers, who had registered his phone number with the Federal Trade Commission's Do Not Call Registry, did not consent to these communications, and despite repeated attempts to unsubscribe from or block the communications, he continued to receive them through October 2024. [10] ¶¶ 13–14, 19. Evers describes the communications as "political content" and, in one instance, as coming "from a political source." *Id.* ¶¶ 10, 12, 17.

Evers filed suit in federal court on October 28, 2024, initially against unnamed defendants. The Court permitted Evers to engage in limited discovery to determine who sent the communications. [8]. Based on this discovery, Evers identified three entities he alleged were responsible for the communications, including CampaignSidekick. [10] ¶ 8; [10-1].[1] Evers attached an exhibit to his amended complaint ("Exhibit 1"), listing communications sent to him during the relevant period. [10-1]. All of the communications indicated as coming from CampaignSidekick in Exhibit 1 are identified as text messages. *Id.*

## III. Analysis

The Act "represents Congress's attempts to address [] concerns about the deleterious effects of telemarketing and telephone solicitations, particularly automated calls." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1045 (7th Cir. 2013) (citing S. REP. 102-178). Among other restrictions, the Act and associated

---

[1] The other defendants have been dismissed. *See* [12] (voluntary dismissal of defendant Bulk Solutions LLC); [46] (stipulation of dismissal regarding defendant DirectText LLC).

2

federal regulations "prohibit many prerecorded calls and calls to persons on the FTC's do-not-call registry." *United States v. Dish Network L.L.C.*, 954 F.3d 970, 974 (7th Cir. 2020).

Evers brings two counts under the Act. For Count I, Evers expressly alleges that CampaignSidekick "willfully and knowingly initiated telephone calls to Plaintiff's telephone using an artificial or prerecorded voice to deliver a message to Plaintiff's cell phone without Plaintiff's prior express consent," in violation of 47 U.S.C. § 227(b)(1)(B). [10] ¶ 23. For Count II, Evers alleges that he "received more than one telephone call within a 12-month period by or on behalf of Defendants in violation of the provisions of 47 U.S.C. § 227(c)(5)" despite listing his phone number with the Do Not Call Registry. [10] ¶¶ 2, 13, 25.

### A. Count I—§ 227(b)(1)

CampaignSidekick argues that because all communications marked as coming from CampaignSidekick in Exhibit 1 are labeled as text messages, Evers has pleaded himself out of a claim under § 227(b)(1)(B). [25] at 5. According to CampaignSidekick, if it "did not place any prerecorded or artificial voice calls to Plaintiff," as a matter of law it did not violate § 227(b)(1)(B) because that statutory provision does not extend to text messages. *Id.* at 5–6. Evers, for his part, argues that the distinction is irrelevant because text messages are "calls" under the Act. [36] at 5–6.

While extrinsic documents may not usually be considered in evaluating the sufficiency of a complaint under Rule 12(b)(6), courts "may examine exhibits … attached to the complaint, or referenced in the pleading if they are central to the claim." *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024). CampaignSidekick

3

argues that this is the case with Exhibit 1, *see* [25] at 4, something Evers does not dispute. The Court agrees that Exhibit 1 is sufficiently central to Evers's claims to consider in evaluating the instant motion.

But CampaignSidekick's argument relies on the assumption that Exhibit 1 is an exhaustive record of the communications sent to Evers during the relevant period. *See* [25] at 5 ("Exhibit 1 to this Memorandum establishes that CampaignSidekick only sent text messages."). Nowhere in the operative complaint (or his response brief) does Evers indicate that Exhibit 1 is exhaustive. And the operative complaint indicates that Evers "received numerous unsolicited text messages *and phone calls* … from Defendants." [10] ¶ 10 (emphasis added). Nothing on the face of the complaint indicates that "phone calls … from Defendants" does not include CampaignSidekick.

It is true that Exhibit 1 appears fairly comprehensive, and the Court can understand how one might therefore draw the inference that Exhibit 1 is a complete list of all the communications at issue. But weighing against that inference is the fact that the parties have yet to engage in general discovery. *See* [35] (staying discovery pending resolution of the motion to dismiss). The expedited discovery that plaintiff conducted before filing his amended complaint was for "the sole purpose of obtaining information to identify the unnamed defendant" and limited to "the name, street address, telephone number and e-mail address of each defendant." [8]. That makes it difficult for the Court to infer that Exhibit 1 represents the complete inventory of communications that Evers received from CampaignSidekick. Consistent with the manner in which the complaint has been plead, there very well may be additional

4

communications transmitted via phone call. Moreover, an inference that Exhibit 1 is comprehensive would be an inference *against* Evers, which the Court is not permitted to make at this phase of the proceedings. *See Iqbal*, 556 U.S. at 678. For these reasons, the Court, granting all reasonable inferences in the nonmovant's favor, *see id.*, cannot conclude that CampaignSidekick only sent text messages to Evers. Evers has thus sufficiently alleged that CampaignSidekick was responsible for both text messages and phone calls.

CampaignSidekick argues that Evers has waived any argument that CampaignSidekick sent communications other than those listed in Exhibit 1. *See* [38] at 2 ("Notably Plaintiff's response does not contest that Exhibit 1 to his amended complaint admits that CSK only sent political text messages to Plaintiff."). But Evers is proceeding pro se, and "[a] document filed pro se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Although Evers does not directly state that Exhibit 1 is *not* exhaustive, he does say that he "did not intend to limit [CampaignSidekick's] liability" via Exhibit 1 and that "the discovery process is necessary for [Evers] to obtain information required to determine the extent of Defendants' connection to each other, including … how many times Defendants contacted Plaintiff [and] what methods Defendants used to contact Plaintiff." [36] at 4–5. By advancing these points, Evers makes sufficiently clear that he has not conceded that Exhibit 1 is a complete list of all communications from CampaignSidekick to Evers.

In short, Evers has adequately alleged that CampaignSidekick sent him unwanted phone calls. Because CampaignSidekick's argument for dismissal of Count I is premised entirely on its contention that Evers only alleged that CampaignSidekick sent text messages, the motion to dismiss is denied as to Count I on that basis. The Court therefore does not reach the issue of whether text messages fall under § 227(b)(1)(B).

Evers separately argues that he has also sufficiently alleged that CampaignSidekick used an automatic telephone dialing system to send text messages, something that is separately prohibited by § 227(b)(1)*(A)*. [36] at 5–6; 47 § 227(b)(1)(A)(iii) ("It shall be unlawful … to make any call … using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service…"). "It is uncontested that text messages to a cellular phone constitute 'calls' within the purview of § 227(b)(1)(A)(iii)," *Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017) (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)), so the prohibition on automatic dialing would apply to any text messages sent by CampaignSidekick.

CampaignSidekick argues that Evers "has not made a Section (b)(1)(A) claim and cannot legitimately make such a claim without violating Rule 11" because, according to CampaignSidekick, Evers "admits in his response that he has not alleged that [CampaignSidekick] used an [automatic dialer] to send him text messages." [38] at 5 (citing [36] at 6). But that is not quite what Evers says. Instead, Evers's response "acknowledges that [Evers]'s Amended Complaint does not *expressly* state that

[CampaignSidekick] used an [automatic dialer]." [36] at 6 (emphasis added). The Court is permitted—indeed, at this phase required—to draw inferences in the nonmovant's favor and, separately, to construe liberally the filings of a pro se litigant. Through this lens, the Court assesses Evers's operative complaint as follows.

Evers alleges that he is the owner of a telephone number "assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii)," [10] ¶ 9, and asks to "be awarded statutory damages for willful infringement of the prohibitions on the use of *automated telephone equipment*," *id.* at 6 (emphasis added). Evers also contends that his allegations that CampaignSidekick used multiple numbers to contact him, used "copy and paste pitches," and the fact that he received multiple messages in the same day together permit the inference that an automatic dialer was used. [36] at 7; [10] ¶ 11 ("Plaintiff has often received multiple phone calls that were disconnected in less than 15 seconds."), ¶ 12 ("Defendants' Abusive Communications do not promptly identify their sources, they all follow the same patterns, such as using phone numbers from the same VoIP providers, text with similar political content, and URLs that redirect to the same websites."), ¶ 14 ("Defendants' use different phone numbers so that, once [Evers] blocked a phone number, a new one would be immediately used for further Abusive Communications.").

Construing Evers's filings liberally, and drawing all reasonable inferences in his favor, the Court concludes that Evers's direct invocation of § 227(b)(1)(A)(iii), the above factual allegations, and his request for statutory damages for "the use of

7

automated telephone equipment" are sufficient to state a claim under § 227(b)(1)(A)(iii) as well.

### B. Count II—§ 227(c)(5)

CampaignSidekick concedes that a text message is also a "call" for the purpose of Evers's claim under § 227(c)(5) (Count II), which gives a private right of action to a person with a number on the Do Not Call Registry "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under" § 227. *See* [25] at 4 (citing *Campbell-Ewald Company v. Gomez*, 577 U.S. 153, 158 (2016)). CampaignSidekick argues that because Evers alleges only communications with "political content" that he has failed to state a claim because "[t]he national DNC registry restrictions do not apply to political text messages." [25] at 7 (citing *Mainstream Mktg. Services, Inc. v. F.T.C.*, 358 F.3d 1228, 1234 (10th Cir. 2004)).

CampaignSidekick relies in particular on *Berger v. Republican National Committee,* No. 4:21-CV-190, 2022 WL 125346 at *3–4 (E.D. Tx. 2022)*,* because "the facts in *Berger* are analogous to the facts in this case." [25] at 7. In *Berger*, the titular plaintiff brought claims under § 227(c)[2] against the Republican National Committee, which sent multiple text messages to Berger that "were indisputably political in nature" despite her phone number being listed on the Do Not Call Registry. *Id.* at *1,

---

[2] An earlier claim under § 227(b) was withdrawn, and *Berger* does not address the merits of that provision. *See Berger*, 2022 WL 125346, at *3.

8

3. But there is, however, a significant factual distinction between *Berger* and the instant case.

In *Berger*, "[t]he RNC principally argue[d] summary judgment is appropriate because Section 227(c) of the TCPA does not cover calls or messages *sent by political organizations*, and *the RNC is a political organization*." *Id.* at *3 (emphases added). CampaignSidekick does not argue that it is a political organization and so does not fall squarely within the reasoning of *Berger*, or the other cited cases. *See Libby v. Nat'l Republican Senatorial Comm.*, 551 F. Supp. 3d 724, 729 (W.D. Tex. 2021) ("However, *political organizations* are exempt from the Do Not Call Registry") (emphasis added); *Deleo v. Nat'l Republican Senatorial Comm.*, No. 221CV03807BRMESK, 2021 WL 5083831, at *9 (D.N.J. Nov. 1, 2021) ("Here, because *political organizations are exempt* from the Do-Not-Call-Registry's restriction, and because the Amended Complaint *identifies the NRSC as a political organization*, Deleo cannot maintain a claim under § 227(c) of the TCPA.") (emphasis added); *Horton v. Nat'l Republican Senatorial Comm.*, No. 3:22-CV-1000-G-BK, 2022 WL 18673259, at *3 (N.D. Tex. Nov. 18, 2022) ("In any event, *political organizations* are exempt from the DNC registry requirement.") (emphasis added); *Horton v. Warnock for Georgia, Inc.*, No. 3:23-CV-69-K-BN, 2024 WL 330497, at *5 (N.D. Tex. Jan. 16, 2024), *report and recommendation adopted*, No. 3:23-CV-0069-K, 2024 WL 330832 (N.D. Tex. Jan. 29, 2024) (citing *Horton*, 2023 WL 3136422, at *2); *Camunas v. National Republican Senatorial Committee*, 570 F.Supp.3d 288, 300 (E.D. Pa. 2021) ("[L]egislative history makes it clear that the statute sought to exclude calls from tax-

9

exempt political organizations generally."). Evers' complaint describes CampaignSidekick only generically as "an entity," not as a political organization. [10] ¶ 8; *compare with Deleo*, 2021 WL 5083831, at *9 (no § 277(c) claim "because the Amended Complaint identifies the NRSC as a political organization …").

However, CampaignSidekick also argues that the messages at issue "do not encourage the purchase or rental of, or investment in, property, goods, or services" and thus are not "telephone solicitations" regulated by the Act. [38] at 8; 47 U.S.C. § 227(a)(4). All the Court knows of the content of the messages are that the operative complaint describes them as "unauthorized telephone solicitations" that contain "political content," and that, in one instance, appear to have come "from a political source." [10] ¶¶ 1, 6, 8, 12, 17. The natural reading of "solicitation" is as a request for something. *See Solicit*, Merriam-Webster's Unabridged Dictionary, https://unabridged.merriam-webster.com/unabridged/solicit (last visited October 6, 2025). But the complaint does not explain what is being requested. And, looking at Exhibit 1, all the communications appear to be for the purpose of political fundraising, not for the purpose of selling any goods, property, or services. *See, e.g.*, [10-1] at 3 ("Your 1,500% GOP match for the FINAL end-of-month deadline was just APPROVED!").

Of course, "political content" and telephone solicitations are not inherently mutually exclusive. As the Court reads the text of 47 U.S.C. § 227(a)(4), a message from a for-profit company encouraging the recipient to purchase a good or service might be a telephone solicitation subject to regulation by the Act even if that

10

solicitation incidentally invoked a politician, election, or other political subject. "Abraham Lincoln wants you to buy a timeshare" may not fall outside of the Act just because a politician is mentioned. But the operative complaint does not suggest that any of the messages Evers received were for the purpose of encouraging him to purchase or invest in any good, service, or property, and so Evers has not alleged that any of the messages fall within the statutory definition of a telephone solicitation.

Because Evers has not alleged facts that establish the messages he received were telephone solicitations under the Act, he has not stated a claim under § 227(c)(5), and CampaignSidekick's motion is therefore granted as to Count II.

## IV. Conclusion

For the foregoing reasons, CampaignSidekick's motion to dismiss [24] is granted in part and denied in part. The motion is denied with respect to Count I and Evers's ability to proceed with a claim under 47 U.S.C. § 227(b)(1)(A). The motion is granted with respect to Count II, although the Court's dismissal of that count is without prejudice. If Evers wishes to amend his complaint in light of the Court's analysis above, he may seek leave to do so. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 519–20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.").

On or before [THREE WEEKS], the parties shall file a joint status report with a proposed discovery plan and addressing whether the parties have discussed settlement and whether the parties would like to participate in a settlement

11

conference with the assigned Magistrate Judge. The Court sets a status hearing on 11/3/25 at 9:30 a.m.

                                                                                         Georgia N. Alexakis
                                                                                         United States District Judge

Date: 10/10/25